**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL FARLEY,             ) | |
|              ) | |
|     Plaintiff,        ) | |
|              ) | |
| vs.               ) | Case No.: 07 C 5254 |
|              ) | |
| RAYMOND WILKE, OFFICER GUZMAN,  ) | Judge Joan B. Gottschall |
| OFFICER FEDERICK, OFFICER CONLON,  ) | |
| OFFICER NOTO, OFFICER GRANA,     ) | Magistrate Judge Geraldine Soat Brown |
| OFFICER HABIAK, OFFICER FEMIASZ,   ) | |
| OFFICER MOORE, OFFFICER COSTELLO,  ) | |
| OFFICER O'CONNOR, and the CITY OF   ) | |
| CHICAGO,             ) | |
|              ) | |
|     Defendants.     ) | |
|              ) | |

<u>**DEFENDANT MICHELLE HABIAK'S ANSWER TO PLAINTIFF'S COMPLAINT**</u>

NOW COMES Defendant, MICHELLE HABIAK, by her attorney, Terrence M. Burns of

DYKEMA GOSSETT PLLC, and for her answer to plaintiff's complaint states:

<u>**JURISDICTION**</u>

1.    The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C.
§1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States;
and this Court's supplementary jurisdiction powers.

<u>**ANSWER:**</u>    This Defendant admits plaintiff's complaint includes claims that invoke the

jurisdiction of this Court.  This Defendant denies any liability to plaintiff for any of the claims

asserted in the complaint.

<u>**PARTIES**</u>

2.    PLAINTIFF is a resident of the State of Illinois and a citizen of the United States.

 <u>**ANSWER:**</u>    This Defendant admits plaintiff provided information to police indicating he

resided in Chicago, Illinois.  This Defendant is without knowledge or information sufficient to

form a belief as to the truth or falsity of any information provided by plaintiff.  This Defendant is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

remaining allegations contained paragraph 2.

3.     The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting
on behalf of the CITY OF CHICAGO.

**ANSWER:**     This Defendant admits she was employed by the Chicago Police Department and

was on duty as a Chicago police officer on August 10, 2006.

4.     The CITY OF CHICAGO is a duly incorporated municipal corporation and is the
employer and principal of the DEFENDANT OFFICERS as well as the other officers and/or
employees referred to in this Complaint (as indicated in the *Monell* claim alleged herein). At all
times material to this complaint, the DEFENDANT OFFICERS were acting under color of state
law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

**ANSWER:**     This Defendant makes no answer or response to the allegations of paragraph 4 to

the extent they are directed against other defendants.  This Defendant admits she is employed by

the Chicago Police Department as a police officer.  Defendant further admits that on August 10,

2006 she was employed as a Chicago police officer and acted in accordance with the duties of

her office.  This Defendant lacks knowledge or information as to the truth or meaning of the

vague allegations in paragraph 4 concerning unnamed or unknown "other officers and/or

employees."   This Defendant denies any remaining allegations contained in paragraph 4

inconsistent with the foregoing.

## FACTS

5.     On or about August 10, 2006, some or all of the DEFENDANT OFFICERS were
engaged in an unreasonable seizure of the PLAINTIFF.  This conduct violated the Fourth
Amendment to the United States Constitution.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 5.

6.     On or about August 10, 2006, PLAINTIFF did not obstruct justice, resist arrest and/or
batter and/or assault any of the DEFENDANT OFFICERS.

**ANSWER:**     This Defendant admits plaintiff did not batter or assault her on August 10, 2006.

This Defendant further admits the police department reports concerning plaintiff's August 10,

2

2006 arrest do not reflect that plaintiff obstructed justice, resisted arrest, or battered or assaulted any of the Defendant Officers. This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained paragraph 6.

7.      The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure to the PLAINTIFF.

**ANSWER:**      This Defendant denies the allegations contained in paragraph 7.

8.      The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/or learn that PLAINTIFF had committed criminal activity of any sort. The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFF.

**ANSWER:**      This Defendant admits she participated in the arrest of plaintiff on August 10, 2006, and further, that plaintiff was charged with criminal offenses. This Defendant denies the remaining allegations contained in paragraph 8.

9.      On August 10, 2006, PLAINTIFF had not committed an act contrary to the laws of the State of Illinois.

**ANSWER:**      This Defendant denies the allegations contained in paragraph 9.

10.     As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICERS, PLAINTIFF was caused to suffer damages.

**ANSWER:**      This Defendant denies the allegations contained in paragraph 10.

11.     On or about August 10, 2006, the DEFENDANT OFFICERS were on duty at all times relevant to this Complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS.

**ANSWER:**      This Defendant admits that on August 10, 2006 she was employed by the Chicago Police Department as a duly appointed police officer, and that her participation in the arrest of plaintiff while on duty was within the course and scope of her employment. This Defendant admits that plaintiff has sued her and Defendant Officers Wilke, Guzman, Federici, Conlan,

Noto, Granat, Remiasz, Moore, Costello, and O'Connor in their individual capacities. This Defendant denies engaging in "the conduct complained of" in the complaint. To the extent any remaining allegations in paragraph 11 are inconsistent with the foregoing, this Defendant denies those allegations.

## CONSPIRACY

12.     Some or all of the DEFENDANT OFFICERS conspired to cause damage to PLAINTIFF in the following manner:

    a.    agreeing to falsely arrest and/or falsely institute criminal charges/proceedings against the PLAINTIFF;

    b.    using excessive force and/or failing to intervene in the use of excessive force against the PLAINTIFF;

    c.    agreeing not to report each other after witnessing and/or using excessive force relative to the PLAINTIFF;

    d.    agreeing not to report each other after falsely arresting and/or charging PLAINTIFF;

    e.    generating false documentation to cover-up for their own and each other's misconduct;

**ANSWER:**     To the extent the allegations of paragraph 12 are directed against this Defendant, she denies those allegations.

13.     In connection with the above conspiracy, the DEFENDANT OFFICERS specifically engaged in communication on or about August 10, 2006, whereby the DEFENDANT. OFFICERS agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above. As a result of this conspiracy, the DEFENDANT OFFICERS by and through their conduct, proximately caused PLAINTIFF to, *inter alia*, suffer injury, be charged with criminal allegations, incur financial loss, including attorney's fees, and suffer emotionally.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 13.

## EQUAL PROTECTION

14.     With regard to an Equal Protection Claim, PLAINTIFF was a "Class of One." In that regard, PLAINTIFF was treated with ill will and/or discriminated against with no rational basis. PLAINTIFF was intentionally treated differently as a result of have a potential claim and

4

witnessing police misconduct attributable to the DEFENDANT OFFICERS. The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to cause further injury to PLAINTIFF by generating false evidence against PLAINTIFF. Further, PLAINTIFF was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and potential claimants against Chicago Police Officers.

**ANSWER:**  To the extent the allegations of paragraph 14 are directed against this Defendant, she denies those allegations.

### *MONELL* ALLEGATIONS

15.  It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

   a.   generate false documentation to cover-up for the misconduct of fellow police officers;

   b.   engage in acts of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

   c.   fail to properly discipline officers from said police department who have committed act(s) of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

   d.   fail to properly investigate a complaint of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence perpetrated by a CITY OF CHICAGO police officer upon another;

   e.   fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence has been committed by said officer upon another;

   f.   allow misconduct to occur in various types and severity such that police officers believe that they can engage in fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence without repercussions and/or significant repercussions;

g.      fail to provide adequate sanctions/discipline to officers who commit fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h.      fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia,* fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i.      fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j.      fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.      fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia,* fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of the body of innocent citizens excessive force, and/or serious acts of violence;

l.      fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.      fail to properly investigate officers who commit acts of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

6

n.      fail to take proper remedial action with officers who' commit acts of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.      fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing acts of fabrication of documents, misrepresentation of facts, unreasonable seizure, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

**ANSWER:**    The allegations in paragraph 15 do not appear to be directed against this Defendant. To the extent a response is deemed necessary from this Defendant, she denies participation in or knowledge of any of the purported customs, practices, and/or policies alleged by plaintiff in paragraph 15, and she therefore denies the allegations contained in paragraph 15, including subparagraphs (a) through (o), inclusive, and each of them.

16.    This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**    The allegations in paragraph 16 do not appear to be directed against this Defendant. To the extent a response is deemed necessary from this Defendant, she denies participation in or knowledge of any of the purported practices and/or customs alleged in the complaint, and she therefore denies the allegations contained in paragraph 16.

17.    A code of silence exists between officers of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:**    The allegations in paragraph 17 do not appear to be directed against this Defendant. To the extent a response is deemed necessary, this Defendant denies participation in

or knowledge of any alleged "code of silence," and she therefore denies the allegations contained in paragraph 17.

## SPECIAL OPERATIONS OFFICERS

18.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least ten civilian complaints lodged against them.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 18.

19.     The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least ten civilian complaints lodged against them, between the years 2001 and 2006.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 19.

20.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least ten civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers).

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 20.

21.     The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 21.

22.    In the year 2007, an order was entered by the HONORABLE JUDGE LEFKOW regarding the Special Operations Officers for the City of Chicago. The order provided, *inter alia,* that the parties were permitted to make public the names of 662 Special Operations Officers that had ten or more civilian complaints lodged against them.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22.

23.    The CITY OF CHICAGO refuses to release the names of the Special Operations Officers, referenced in the order of the HONORABLE JUDGE LEFKOW, to the public.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 23.

24.    There are at least four police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 24.

25.    Within the last four years, six police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 25.

26.     There are ten police officers who worked in the Special Operations Section who received a combined total of 408 complaints of misconduct (with the Office of Professional Standards). With regard to those 408 complaints, only three were sustained.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 26.

27.     Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never received a complaint that has been sustained.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 27.

## OFFICE OF PROFESSIONAL STANDARDS (OPS)

28.     Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last ten years, have resulted in a "sustained finding" against said officer.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 28.

29.     The OPS is fully funded by the City of Chicago.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 29.

30.    The OPS, over the last 10 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 30.

31.    The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31.

32.    Over the last 10 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by OPS.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32.

33.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

**ANSWER:**    The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33.

34.     Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the work performed by OPS to determine whether OPS is properly investigating the complaints of misconduct of Chicago Police Officers.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34.

35.     Due to the intimate connection between the OPS and the Mayor of the City of Chicago as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35.

36.     For example, Officer Raymond Piwnicki obtained 56 complaints against him within seven years and failed to receive meaningful discipline for any act of misconduct.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 36.

37.     Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as ten lawsuits, amounting to over 2.5 million dollars that had to be paid out of City tax dollars as a result of the litigation.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 37.

## **PARTICULARIZED MISCONDUCT OF**
## **CERTAIN OFFICERS**

38.    Chicago Police Officer Broderick Jones has pled guilty, in Federal Court, before the
Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit:
possession of cocaine with the intent to distribute, robbery and extortion.

**ANSWER:**    The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 38.

39.    In his plea of guilty, Broderick Jones admitted that he committed robbery, extortion and
possession of cocaine with the intent to distribute, while he was working for the Chicago Police
Department and while he was acting in the capacity of a Chicago Police Officer. He also
admitted to undertaking these efforts from 1999 through March 2005.

**ANSWER:**    The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 39.

40.    Chicago Police Officer Corey Flagg pled guilty, before the Honorable Judge Guzman, in
Federal Court, to having conspired, along with Chicago Police Officers, Eural Black, Darek
Haynes, Broderick Jones and others, to intentionally possessing and distributing cocaine and
marijuana.

**ANSWER:**    The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 40.

41.    Corey Flagg pled guilty to having worked with Eural Black, Darek Haynes and Broderick
Jones to obtain cocaine, marijuana and drug money, through robbery and extortion.

13

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41.

42.     Corey Flagg, in his plea of guilty, stated that he understood that any cocaine and marijuana obtained during the course of his criminal efforts would be distributed to the people he was criminally involved with (i.e. Eural Black, Darek Haynes and Broderick Jones).

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 42.

43.     Corey Flagg admitted, in his plea agreement, that while he was a Chicago Police Officer, he knew that Broderick Jones recruited Chicago Police Officers, including himself and Officer Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 43.

44.     Corey Flagg, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official position as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 44.

45.     Eural Black, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Hibbler:

14

      a.       attempting to conspire and distribute controlled substances;

      b.       multiple acts of robbery and, racketeering;

      c.       the procurement of weapons from individuals through robbery and extortion;

      d.       recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

      e.       delivering controlled substances in exchange for cash;

      f.       not enforcing the law with individuals that he was involved so that he could promote criminal activity;

      g.       along with Eural Black, Corey Flagg, Darek Haynes and non-Chicago Police Officers, distributing cocaine (up to 5 kilograms);

      h.       distributing cocaine in exchange for cash;

      i.       conducting home invasions of individuals (along with Corey Flagg, Eural Black and Darek Haynes) for the purpose of obtaining money, property, weapons and controlled substances;.

      j.       using the power of his office as a Chicago Police Officer to engage in the above (a-i) acts;

      k.       using the facilities of the Chicago Police Department, namely, his badge, gun, bullet proof vest and handcuffs, to promote his illegal activity (a-i).

**<u>ANSWER:</u>**   The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45.

**<u>OPS INVESTIGATION RELATIVE TO<br>BLACK, FLAGG, JONES AND HAYNES</u>**

46.    Corey Flagg, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**<u>ANSWER:</u>**   The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 46.

47.     Corey Flagg has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**     The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 47.

48.     Eural Black, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 48.

49.     Broderick Jones, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 49.

50.     Darek Haynes has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**     The allegations contained in this paragraph are not directed against this

Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50.

51.     Darek Haynes, prior to being charged of criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 51.

## LAWLESSNESS IN THE CHICAGO POLICE DEPARTMENT AND ITS CONNECTION TO THE POLITICAL SCHEME OF THE CITY OF CHICAGO

52.     Due to the lack of legitimate review of misconduct by Chicago Police Officers, many police officers for the City of Chicago believe that they can engage in lawless activities.

**ANSWER:**     To the extent the allegations of paragraph 52 directed against this Defendant, she denies those allegations.  This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 52.

53.     The financial relationship between the City of Chicago and the OPS is such that the OPS can not be independent.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 53.

54.     This is due to the fact that, *inter alia,* if a determination is made, by OPS, that a police officer has committed an act of misconduct, said determination and the facts which flow from said determination, may be used by the victim, against whom the misconduct was inflicted, to receive a monetary award and/or settlement against the City of Chicago.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 54.

55.     In other words, if OPS renders a decision that a complaint should be sustained against an officer, the complainant may use the information gathered, as well as the fact that the complaint has been sustained, against the officer in a civil proceeding, to receive compensation.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 55.

56.     Sustained complaints by OPS dramatically increases the likelihood that the City of Chicago will have to indemnify the officer for the misconduct inflicted by said officer.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 56.

57.     Due to the structure of OPS and its intimate connection with the City of Chicago, OPS has been an illegitimate entity to investigate the misconduct of Chicago Police Officers.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 57.

58.     Due to the structure of OPS and its intimate connection with the City of Chicago, Chicago Police Officers have been able to engage in significant acts of lawlessness.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 58.

59.     It is due to these lawless activities that the constitutional rights of citizens become infringed, as police officers believe that they will be protected by OPS, which is, in turn, protected by the Mayor of the City of Chicago who appoints the person in charge of OPS.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 59.

## MISCELLANEOUS FACTS REGARDING *MONELL* LIABILITY

60.     In the year of 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not beheld accountable for misconduct.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 60.

61.     William M. Beavers was an Alderman for the City of Chicago. In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

**ANSWER:**     The allegations contained in this paragraph are not directed against this Defendant.  To the extent a response may be deemed necessary, this Defendant admits William Beavers was an alderman in Chicago.  This Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 61.

62.     Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 62.

63. Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant admits the allegations contained in paragraph 63.

64. Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16565 (N.D. Ill. Sept. 19, 2003).

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 64.

65. In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed, and slanted in favor of the officers.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 65.

66. Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's the 1990's, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:** The allegations contained in this paragraph are not directed against this

20

Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 66.

67. Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's the 1990's, and the fact that the Mayor acknowledges that be failed to properly investigate torture that occurred by Chicago Police Officers while he was Cook County State's attorney, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 67.

## BRAINMAKER

68. In 1995, the City of Chicago became aware of the BrainMaker program.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 68.

69. "BrainMaker" is a software product which can be used as an assistive device to forecast which officers on the police force are potential candidates for misbehavior.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 69.

70. The Department's Internal Affairs Division used BrainMaker to study 200 officers who had been terminated for disciplinary reasons and developed a database of patterns of characteristics, behaviors and demographics found among the 200 police officers.

21

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 70.

71.    The purpose of this study was to try to predict and/or understand the misbehavior of Chicago Police Officers.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 71.

72.    BrainMaker compared current officers against the pattern gleaned from the 200 member control group and produced a list of officers who, by virtue of matching the pattern or sharing questionable characteristics, were deemed to be "at risk."

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 72.

73.    BrainMaker was used to study the records of 12,500 police officers (records that included such information as age, education, sex, race, number of traffic accidents, reports of lost weapons or badges, marital status, performance reports and frequency of sick leaves).

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 73.

74.    The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago Police Officers. Of those 91 people, nearly half were found to be already enrolled in a counseling program founded by the personnel department to help officers that were found to have engaged in acts of misconduct.

22

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 74.

75. Terry Heckart, a graduate student at Ohio's Bowling Green State University, recommended BrainMaker to OPS and/or the Office of Internal Affairs.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 75.

76. Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the City, through its agents, abandoned the project, further demonstrating the inherent difficulty in having the City of Chicago police itself.

**ANSWER:** The allegations contained in this paragraph are not directed against this Defendant. To the extent a response may be deemed necessary, this Defendant states she is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 76.

<u>**COUNT I**</u>
<u>**§1983 False Arrest**</u>

77. PLAINTIFF re-alleges paragraphs 1 - 76 as though fully set forth herein.

**ANSWER:** This Defendant adopts and restates her answers and responses to paragraphs 1 through 76 as and for her answer and response to paragraph 77 as though fully set forth herein.

78. The actions of the DEFENDANT OFFICERS caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity. Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment of the United States Constitution.

**ANSWER:** This Defendant denies the allegations contained in paragraph 78.

79.     The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 79.

        **WHEREFORE**, Defendant, MICHELLE HABIAK, denies plaintiff is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff on count I, and for her costs and such further relief as this Court deems just.


## COUNT II
## Malicious Prosecution - State Claim

80.     PLAINTIFF re-alleges paragraphs 1 - 76 as though fully set forth herein.

 **ANSWER:**     This Defendant adopts and restates her answers and responses to paragraphs 1 through 76 as and for her answer and response to paragraph 80 as though fully set forth herein.

81.     The DEFENDANT OFFICERS alleged that PLAINTIFF violated the laws of the State of Illinois.  These allegations commenced or continued a criminal proceeding against PLAINTIFF.

 **ANSWER:**     This Defendant admits that plaintiff was arrested and subsequently charged with violations of the laws of the State of Illinois.  This Defendant further admits, upon information and belief, criminal proceedings were commenced against plaintiff.  This Defendant denies any remaining allegations contained in paragraph 81 inconsistent with the foregoing.

82.     The DEFENDANT OFFICERS engaged in this effort without probable cause.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 82.

83.     The underlying criminal charges were ultimately resolved in favor of PLAINTIFF.

 **ANSWER:**     This Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 83.

84.     The underlying criminal charges were resolved in a manner indicative of innocence.

 **ANSWER:**     This Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 84.

85.     The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 85.

**WHEREFORE**, Defendant, MICHELLE HABIAK, denies plaintiff is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff on count II, and for her costs and such further relief as this Court deems just.

## COUNT III
## § 1983 Conspiracy Claim

86.     PLAINTIFF re-alleges paragraphs 1 - 76 as though fully set forth herein.

**ANSWER:**     This Defendant adopts and restates her answers and responses to paragraphs 1 through 76 as and for her answer and response to paragraph 86 as though fully set forth herein.

87.     The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the United States Constitution, *inter alia,* the Fourth Amendment.

**ANSWER:**     This Defendant denies the allegations contained in paragraph 87.

**WHEREFORE**, Defendant, MICHELLE HABIAK, denies plaintiff is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff on count III, and for her costs and such further relief as this Court deems just.

## COUNT IV
## §1983 Unlawful Entry/Search Of Residence

88.     PLAINTIFF re-alleges paragraphs 1 - 76 as though fully set forth herein.

**ANSWER:**     This Defendant adopts and restates her answers and responses to paragraphs 1 through 76 as and for her answer and response to paragraph 88 as though fully set forth herein.

89. The DEFENDANT OFFICERS invaded the home owned or occupied by PLAINTIFF without a valid search warrant, probable cause, exigent circumstances and/or any other lawful basis, and therefore violated the Fourth Amendment to the United States Constitution.

**ANSWER:** This Defendant denies the allegations contained in paragraph 89.

90. The DEFENDANT OFFICERS unlawfully conducted a search therein.

**ANSWER:** This Defendant denies the allegations contained in paragraph 90.

91. The aforementioned actions were the direct and proximate cause of the violations as set forth above.

**ANSWER:** This Defendant denies the allegations contained in paragraph 91.

**WHEREFORE**, Defendant, MICHELLE HABIAK, denies plaintiff is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff on count IV, and for her costs and such further relief as this Court deems just.

## COUNT V
## Equal Protection - Class Of One

92. PLAINTIFF re-alleges paragraphs 1 - 76 as though fully set forth herein.

**ANSWER:** This Defendant adopts and restates her answers and responses to paragraphs 1 through 76 as and for her answer and response to paragraph 92 as though fully set forth herein.

93. The actions of THE DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

**ANSWER:** This Defendant denies the allegations contained in paragraph 93.

94. The aforementioned actions of said OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

**ANSWER:** This Defendant denies the allegations contained in paragraph 94.

**WHEREFORE**, Defendant, MICHELLE HABIAK, denies plaintiff is entitled to any judgment whatsoever as against her, and she requests that this Court enter judgment in her favor and against plaintiff on count V, and for her costs and such further relief as this Court deems just.

## COUNT VI – *MONELL*

Defendant Habiak is not a defendant from which plaintiff seeks relief in count VI. Defendant Habiak therefore does not answer or respond to the allegations contained in count VI.

## COUNT VII
## 745 ILCS 10/9-102 Claim Against The CITY OF CHICAGO

Defendant Habiak is not a defendant from which plaintiff seeks relief in count VII. Defendant Habiak therefore does not answer or respond to the allegations contained in count VII.

## COUNT VIII
## Supplementary Claim For *Respondeat Superior*

Defendant Habiak is not a defendant from which plaintiff seeks relief in count VIII. Defendant Habiak therefore does not answer or respond to the allegations contained in count VIII.

## DEFENDANT HABIAK'S AFFIRMATIVE DEFENSES

1. An award of punitive damages would deprive Defendant Habiak of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

2. Under the Illinois Tort Immunity Act, Defendant Habiak is not liable for any of the state law claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

3.      Defendant Habiak is not liable for any of plaintiff's claims because a public employee acting within the scope of her employment is not liable for an injury caused by the act or omission of another person.  745 ILCS 10/2-202.

4.      Defendant Habiak is entitled to qualified immunity for her conduct because it was not clearly established that her actions violated plaintiff's constitutional rights.

5.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principal that plaintiff has a duty to mitigate those damages.

6.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to, police reports and court records, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

## **JURY DEMAND**

Defendant Michelle Habiak respectfully requests a trial by jury.


Dated: December 10, 2007                    Respectfully submitted,


                                            s/ Paul A. Michalik
                                            _____
Terrence M. Burns                           One of the Attorneys for Defendant,
Harry N. Arger                              MICHELLE HABIAK
Paul A. Michalik
Daniel M. Noland
Kimberly D. Fahrbach
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2007, I electronically filed the foregoing

**Defendant Michelle Habiak's Answer to Plaintiff's Complaint** with the Clerk of the Court

using the ECF system, which sent electronic notification of the filing on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Law Office of Blake Horwitz
155 North Michigan Avenue
Suite 723
Chicago, Illinois  60601
312.6l6.4433
lobh@att.net

s/ Paul A. Michalik
Paul A. Michalik

CHICAGO\2401168.1

29